```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                     COLUMBIA DIVISION
```

CLANT M. SEAY,                  )
                                )
        Plaintiff               )
                                )   No. 1:16-0068
v.                              )   Chief Judge Crenshaw/Brown
                                )   **Jury Demand**
BUCKY ROWLAND in his official   )
capacity as Sheriff of Maury    )
County, Tennessee, *et al.*,    )
                                )
        Defendants              )

**TO: THE HONORABLE WAVERLY D. CRENSHAW, JR.**

### REPORT AND RECOMMENDATION

Presently pending is the Plaintiff's motion for a preliminary injunction (Docket Entry 152), which was supported by a memorandum of law (Docket Entry 153). The motion has been responded to by various of the Defendants (Docket Entries 156, 157, 158 and 160). The Plaintiff has filed a reply (Docket Entry 159). For the reasons stated below, the Magistrate Judge recommends that the motion for preliminary injunction be denied.

### BACKGROUND

This litigation began in August 2016 with a verified complaint by the Plaintiff Clant M. Seay, proceeding *pro se*. An initial case management order was entered on January 17, 2017. In that order the Plaintiff's theory of the case (Docket Entry 24) was set out as follows:

> Animal cruelty to Tennessee Walking Horses has been perpetrated and embedded in the Middle Tennessee culture since the 1960s. Native Tennessean MTSU Horse Science

Professor Equine Vet Dr. John Haffner says the "Big Lick" "is a "pain induced" gait and "is a business built on the suffering and pain of horses." With the advent of social media, concerned animal welfare advocates (local citizens), and plaintiff (adjudicated as a news reporter (Maury County Circuit Court Order Sep. 29, 2015 – State of Tennessee vs. Jamie Brandon Lawrence, Criminal #24363),have attended "Big Lick" horse shows in public venues in Tennessee, Mississippi, Florida and North Carolina, where they have made videos and taken photographs documenting "Big Lick"animal cruelty, and "the culture" which supports it. These videos/photos have been published on the internet to inform the public. These have reached more than 6,000,000 persons, and been viewed over 3,000,000 times. On June 3, 2016, CCABLAC (Citizens Campaign Against "Big Lick" Animal Cruelty) animal welfare advocates (Tennesseans), and plaintiff paid the admission price and attended the Columbia Spring Jubilee Horse Show held in the public Maury County Park where they peacefully exercised their First Amendment rights which included making videos and taking photographs. State actor Maury County (TN) Sheriff Bucky Rowland approached and ordered them to turn off their video cameras and threatened "criminal liability" if they did not. It appears that Sheriff Bucky Rowland was either "influenced by" - "conspired with" – or was"manipulated" by persons in an effort to intimidate, threaten, interfere with and deprive the Plaintiff and the animal welfare advocates in exercise of their First and Fourteenth Amendment constitutional rights. Sheriff Rowland is responsible for law enforcement in public parks in Maury County. His constituent, Mr. David Sisk, is the President of the Maury County Horsemans Association which sponsored the Columbia Spring Jubilee, June 2-4, 2016. Mr. Sisk is a wealthy"Big Lick" Tennessee Walking Horse breeder, exhibitor and judge who publicly stated that he owns $500,000.00 of "Big Lick" Tennessee Walking Horses. Mr. Jerry Harris is a "Big Lick"advocate who makes his living videoing "Big Lick" horse shows, and hosting a cable television show which promotes the "Big Lick" Tennessee Walking Horse culture and "way of life". Neither Mr. Sisk nor Mr. Harris wanted the Plaintiff nor the CCABLAC animal welfare advocates to make videos at the Columbia Spring Jubilee Horse Show, and put them on the internet for the purpose of informing the public of the animal cruelty. Mr. Sisk, Mr. Harris and possibly others, apparently conspired with, influenced, persuaded and/or manipulated Sheriff Bucky Rowland, to attempt to

2

stop CCALAC advocates from exercising their First Amendment constitutional rights at the Maury County Park in Columbia, Tennessee. Discovery is necessary to get to the bottom of what happened. A video made by Plaintiff shows a "Big Lick" patron verbally assaulting and threatening a peaceful CCABLAC animal welfare advocate, and also taking a swing at a news reporter, while Sheriff Bucky Rowland's Chief Deputy Mr. Ray Jeter simply looked on and did nothing to dissuade the threatening actions of the "Big Lick" aggressor. Another video shows Chief Deputy Ray Jeter working in conjunction with Mr. Jerry Harris who was unhappy with the Plaintiff and CCABLAC advocates exercising their First and Fourteenth Amendment rights in the Maury County Park. There is an "alleged" Agreement entered into by Mr. Sisk with Mr. Harris regarding "copyrights" in an attempt to deprive horse show patrons exercising their constitutional rights. Despite repeated request, the "alleged" agreement was not provided to plaintiff by Horse Show Manager Mr. Sisk.

Since the June 3, 2016, show which sparked the complaint in this matter, a subsequent show was held in June 2017 and another is scheduled for May 31 - June 2, 2018.

For the 2017 show the parties entered into an agreed stipulation (Docket Entry 45) concerning the activities of the Sheriff's Department. As a result of this order the Plaintiff withdrew his motion for a preliminary injunction (Docket Entry 33).

Again, on August 7, 2017 (Docket Entry 76) the parties entered into an agreed joint stipulation and order concerning the 2017 PC Splash Horse Show. In that order the Maury County Sheriff's Department agreed to refrain from engaging in any discussion with protestors, show patrons, show management, or anyone else concerning the contracts dealing with copyright or video rights for the show.

3

The Plaintiff asked the Sheriff's Department to sign a similar agreement for the May/June 2018 horse show. The Defendants declined to sign such an agreement, alleging that the Plaintiff had misstated the agreement and, in effect, attempted to publicize it as an admission of liability.

After a telephone call with the undersigned about the matter, which was summarized in the undersigned's order of May 9, 2018 (Docket Entry 154), the Plaintiff filed a motion for preliminary injunction (Docket Entry 152) and attached as Exhibit 152-2 a proposed order similar to that previously entered (Docket Entry 76).

**LEGAL DISCUSSION**

The four factors for the issuance of a preliminary injunction are well known.

1. The plaintiff's likelihood of success on the merits;

2. whether the plaintiff will suffer irreparable injury without a preliminary injunction;

3. whether an issuance of the preliminary injunction would cause substantial harm to others; and

4. whether the public interest would be served by issuance of a preliminary injunction.

*McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

After considering the arguments of counsel at the telephone conference and the brief the Magistrate Judge is of the opinion that the Plaintiff has not met this burden. The Plaintiff points out to threats by a nonparty against a member of a group of

4

volunteers he encouraged to attend horse shows and protest the treatment of the horses in 2016. He has not cited any actual violence in the two horse shows where the parties entered into a stipulated agreement concerning security and management of the shows. He has provided no information that actions from 2016 are likely to occur as to difficulties with the show later this month. In fact, the evidence has shown that the last two shows have been incident free.

The Sheriff has provided an affidavit (Docket Entry 160) that he will provide the same security that was used in 2017 and that he has no intention of having his deputies getting into any discussion with protestors, show patrons, show management, or anyone else concerning any contracts or dealing with contract enforcement (Docket Entry 160-1). This horse show is two years removed from the horse show which precipitated this litigation.

The Plaintiff has produced no evidence that any of the named Defendants have sought to prevent any individual intending to protest this horse show from attending or from otherwise protesting the show.

At the present time the Plaintiff has not shown a strong likelihood of success. There are motions for summary judgment seeking to dismiss his claims by all Defendants.

Whether the Plaintiff succeeds on the merits or not, it does not directly affect the present request for a preliminary injunction. As noted above, the Plaintiff has produced no proof

5

that anyone will attempt to prohibit him or any members of the group he has associated with from attending or filming the horse show. Without such proof it is impossible to conclude that the Plaintiff will suffer irreparable injury without a preliminary injunction. The fact that the Sheriff has stated under oath that he will provide the same protection that was used in last year's peaceful show is strong evidence that the Plaintiff will not suffer irreparable harm.

It should also be noted that the Plaintiff, proceeding *pro se*, represents only himself. The Plaintiff is not authorized to seek relief for other members who may attend the horse show.

The Plaintiff is correct that the issuance of such a preliminary injunction would not cause substantial harm to others since in essence as the Sheriff is agreeable to providing the same level of protection as previously provided.

Finally, the Plaintiff has not shown that the issuance of such an injunction would be in the public interest. Given the absence of a demonstrated threat, the Courts are in a poor position to manage law enforcement activities in situations of this nature. It is particularly true when the Sheriff has given detailed affidavit of the security that will be used and that was successful last year. To the extent the Court would order increased security at one show means there may be less security for parts of the county. Decisions like this are best left to law enforcement

officials absent strong evidence they will ignore their sworn duty. Such evidence is lacking.

In short, the Plaintiff is simply speculating as to difficulties he may incur this year based on what was alleged to have occurred two years ago.

## RECOMMENDATION

The Magistrate Judge, as set forth above, recommends that the Plaintiff's motion be denied.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 22nd day of May, 2018.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge