# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| CLANT M. SEAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:16-cv-00068 |
| v. | ) | Judge Campbell |
| | ) | Magistrate Judge Brown |
| | ) | |
| BUCKY ROWLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

To: The Honorable Chip Campbell, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are the following motions: Defendant Bucky Rowland's motion for summary judgment (Docket Entry No. 119), Defendants David Sisk's and Callaway Dial's motion for summary judgment (Docket Entry No. 123), and Defendant Jerry W. Harris's motion for summary judgment (Docket Entry No. 127). The Magistrate Judge **RECOMMENDS** that these motions (Docket Entry Nos. 119, 123 and 127) be **GRANTED**; that Defendant Sisk's request for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927 be **DENIED**; and that Defendant Dial's request for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 be **GRANTED, but DENIED** as to 28 U.S.C. § 1927.

## I. INTRODUCTION

Plaintiff, Clant M. Seay, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants: Bucky Rowland, Sheriff of Maury County, Tennessee, in his official capacity; Jerry W. Harris; David Sisk; and Callaway Dial. Plaintiff asserts violations of his civil rights under the First and Fourteenth Amendments. Plaintiff asserts that Defendants conspired to deny him from exercising his "First and Fourteenth Amendment constitutional rights to take photos and videos at

2016 Columbia Spring Jubilee Horse Show on June 3, 2016, and post them on the internet and social media." (Docket Entry No. 53, at ¶ 27). The District Judge referred the case to the Magistrate Judge for decision on all pretrial, nondispositive motions, and a report and recommendation on any dispositive motions. (Docket Entry No. 5).

Before the Court are the following motions: Defendant Rowland's motion for summary judgment (Docket Entry No. 119); Defendants Sisk's and Dial's motion for summary judgment (Docket Entry No. 123); and Defendant Harris's motion for summary judgment (Docket Entry No. 127). Sheriff Rowland contends (1) that Plaintiff fails to show that his First Amendment rights were violated; (2) that Plaintiff's Fourteenth Amendment due process claim should be dismissed because it is duplicative of his First Amendment claim; (3) that Plaintiff fails to show that Rowland conspired to violate Plaintiff's First Amendment rights; ans (4) that Plaintiff's claims for declaratory and injunctive relief should be dismissed because Plaintiff lacks Article III standing.

Sisk and Dial contend that Plaintiff cannot show that his constitutional rights were violated or that Sisk and Dial entered into a conspiracy with Sheriff Rowland to violate Plaintiff's constitutional rights. Sisk and Dial also seek an award of attorneys' fees and costs as the prevailing parties under 42 U.S.C. § 1988 and under 28 U.S.C. § 1927 for the manner in which Plaintiff unreasonably and vexatiously multiplied the proceedings in this action.

Harris contends (1) that Plaintiff's First Amendment rights were not violated; (2) that Plaintiff fails to show that Harris was a state actor; (3) that Plaintiff fails to establish a conspiracy; and (4) that Plaintiff cannot show a violation of his due process rights under the Fourteenth Amendment.

## II. FACTUAL BACKGROUND[1]

Plaintiff, a licensed attorney, is involved with a grass roots animal welfare group that refers to itself as the "Citizens Campaign Against "Big Lick" Animal Cruelty ("CCABLAC"). (Docket Entry No. 135, Plaintiff's Response to Defendant Rowland's Statement of Undisputed Facts, at ¶ 8; Docket Entry No. 126-4, Plaintiff Deposition, at 6; Docket Entry No. 126-5, Plaintiff Deposition, at 28; Docket Entry No. 148-2, at 2-3).[2] Plaintiff makes arrangements for and facilitates the activities of the CCABLAC, whose supporters oppose and protest "Big Lick" animal cruelty, at Tennessee Walking Horse competitions. *Id.* at ¶ 9; Docket Entry No. 139, Plaintiff's Response to Defendants Sisk's and Dial's Statement of Undisputed Facts, at ¶ 1. Plaintiff attends horse shows to take photographs and videos of activities that take place at the horse shows, and regularly publishes such photographs and videos on Plaintiff's website, www.billygoboy.com, as well as other social media, such as Facebook. *Id.* at ¶ 9; Docket Entry No. 139, at ¶¶ 2-3. Plaintiff's claims stem from events that allegedly occurred on June 3, 2016, during the Columbia Spring Jubilee Horse Show that was being held at the public Maury County Park. (Docket Entry No. 53, Amended Complaint, at ¶ 19).

---

[1]At times in his response memoranda, Plaintiff cites to his amended complaint. "[A]t the summary judgment stage after the close of discovery, Plaintiff can no longer simply rely on the allegations in his complaint; rather, he must 'present affirmative evidence' supporting his allegations in order to withstand summary judgment." *Bennett v. Schroeder*, 99 F. App'x 707, 717 (6th Cir. 2004) (citation omitted). Although Plaintiff styled his amended complaint as a verified amended complaint, the verification does not comply with the requirement of 28 U.S.C. § 1746, as the verification does not state that Plaintiff is affirming the allegations under penalty of perjury. *Myers v. Transcor Am.*, LLC, No. 3:08-295, 2010 WL 3824083, at *9 (M.D. Tenn. Sept. 30, 2010); *Jackson v. Heyns*, No. 1:13-CV-636, 2015 WL 5691168, at *5 (W.D. Mich. Sept. 28, 2015). Thus, Plaintiff cannot cite to the allegations in his amended complaint to create a genuine issue of material fact.

[2]Unless otherwise stated, citations are to the Court's ecf pagination. References to actual deposition pages are denoted with a "p.".

The 65th Annual Spring Jubilee Walking Horse Show was held by the Maury County Horseman's Association ("MCHA") at the arena at the Maury County Park from June 2, 2016 through June 4, 2016. (Docket Entry No. 135, at ¶¶ 1-2; Docket Entry No. 139, at ¶ 5). On June 1, 2016, Defendant David Sisk, the Jubilee Horse Show manager, and Defendant Jerry Harris, the Producer of the television show *What a Horse*, entered into an agreement entitled, "Purchase of Exclusive Video Rights Event: 65th Annual Spring Jubilee Walking Horse Show June 2-4, 2016" (the "Agreement"). (Docket Entry No. 135, at ¶ 3; Docket Entry No. 120-2, Sisk Deposition, at 8). Harris paid Sisk $100 for the exclusive video rights for commercial reproduction of the Columbia Jubilee Horse Show. (Docket Entry No. 120-2, Sisk Deposition, at 4-5, 8; Docket Entry No. 120-3, Harris Deposition, at 4).[3]

Plaintiff attended all three nights of the horse show, took video all three nights, and published footage from all three nights on the internet. (Docket Entry No. 139, at ¶ 6). At no point during the show did Plaintiff have any interaction with Harris. (Docket Entry No. 142, Plaintiffs Response to Defendant Harris's Statement of Undisputed Facts, at ¶ 3). Plaintiff and other individuals affiliated with the CCABLAC attended the show to educate the public and make them aware of the animal cruelty involved in the Big Lick industry. (Docket Entry No. 135, at ¶ 10). On June 3, 2016, the second night of the show, Plaintiff and his associates attended the show. (Docket Entry No. 142, at ¶ 5). Plaintiff had hired a professional videographer, Jay Granberg, to videotape

_____

[3]Sisk testified that he entered into the agreement on behalf of the MCHA after getting approval from Larry Brewer within the association. (Docket Entry No. 139, at ¶ 37; Docket Entry No. 126-1, Sisk Deposition, at 5). Larry Brewer testified that he could not recall having a discussion with Sisk regarding the video rights agreement. (Docket Entry No. 134-1, Larry Brewer Deposition, at pp. 8, 35-37). Yolanda Dial, at the time the MCHA treasurer, testified that she was unaware of the agreement until Sisk presented her with a $100 bill on or about June 1, 2016. (Docket Entry No. 134-4, Yolanda Dial Deposition, at pp. 27-28, 31-32).

4

the second and third nights of the show. (Docket Entry No. 139, at ¶ 10). Other members of the protest group also used smaller cameras and iPhones to videotape portions of the Columbia Jubilee that evening. *Id.* at ¶ 12.

The Maury County Sheriff's Department was present at the show in its capacity as the County's law enforcement body. (Docket Entry No. 135, at ¶ 5). On June 3, 2016, at the request of Harris and show management--David Sisk--Defendant Sheriff Bucky Rowland approached and delivered a message to Plaintiff that the copyrights to the show had been purchased. (Docket Entry No. 142, at ¶ 6; Docket Entry No. 128-5, Rowland Deposition, at 5). Prior to June 3, 2016, Sheriff Rowland was not aware that Sisk and Harris had entered into any such agreement. (Docket Entry No. 135, at ¶ 7). Sheriff Rowland and Harris did not know each other prior to the show. (Docket Entry No. 142, at ¶ 22).

According to Plaintiff, Sheriff Rowland ordered him and his "journalistic associates and sources" to turn off their video cameras. (Docket Entry No. 53-1, Seay Affidavit, at ¶ 15; Docket Entry No. 139, at ¶ 14). Plaintiff asked Sheriff Rowland to repeat what he said while he recorded him. *Id.* On the recording, Sheriff Rowland states: "I've asked you to turn your video cameras off because I have been made aware that the copyright to this show has been bought. Any reproduction of that, you could open yourself up for a civil suit and possibly criminal." (Docket Entry No. 135, at ¶ 17). The recording further reflects the following colloquy:

> Seay: We're welcome to have a civil suit but that's not the responsibility of law enforcement, Sheriff.
>
> Rowland: I am just telling you what these . . . what the folks have relayed to me.
>
> Seay: I fully understand what they have relayed, and they are welcome to sue me if they want to. My name is Clant M. Seay, PO Box 318 Oxford, Mississippi. Now, if

you are telling people that they will be arrested if they don't stop then that is a whole another situation, that's a violation of the constitution of the United States.

Rowland: I explained it to you Mr. Seay and I will be back to speak with you in a few minutes and let you make that decision.

(Docket Entry No. 35, Manual Filing of CD, Exhibit E).[4]

Bill Haines, who provided security for Plaintiff and was present during this conversation, testified that Sheriff Rowland's tone was "normal," and that "his tone was more commanding the first time and more polite the second time" when Sheriff Rowland knew Plaintiff was recording him. (Docket Entry No. 128-6, Haines Deposition, at 7-8; Docket Entry No. 147-2, at 7; Docket Entry No. 134, at 14). Haines explained:

A: .... Yeah, the words I recall, I'm going to need you to stop recording or turn the camera off, something like that. So I am going to need you to -- as law enforcement, I understand the difference between an order and -- verbal Judo and interpersonal communication is something that's dissected pretty clearly. And the second time, I believe he phrased it more as a question, would you please, something like that, stop recording, would you please turn it off. So there was a difference in tone my point. It was not abrasive, not loud or threatening or anything like that.

Q: And that's on either occasion, either what happened before the recording or during the recording, neither of those was abrasive; is that what you are saying?

A: That would be my opinion. . . . It was polite, professional, just there was a difference between the two, one commanding and one a more softer request.

(Docket Entry No. 128-6, at 8).

_____

[4]Another video on the CD shows Harris telling one of the "journalistic associates," who was accompanied by a Maury County Sheriff Deputy, that she was told "to get out of there," that she could not take any more pictures or post any pictures of the show, and that if he saw any pictures posted anywhere he would come after her in court. (Docket Entry No. 35, CD, Exhibit G, at 6:20-7:23). However, Plaintiff did not witness this as he testified that he was not in the vicinity during this interaction. (Docket Entry No. 128-2, at 7-8).

Sheriff Rowland did not arrest, cite, display his handcuffs, or state that he was going to arrest or cite Plaintiff or any other animal welfare advocate if they continued to videotape the show. (Docket Entry No. 135, at ¶ 20; Docket Entry No. 126-4, at 32-33). Plaintiff continued taking video after speaking with Sheriff Rowland, and Plaintiff's videographer and other animal advocates continued videoing the show as well. (Docket Entry No. 139, at ¶¶ 18-19, 22; Docket Entry No. 135, at ¶ 25). Plaintiff testified that he "stood [his] ground" following his conversation with Sheriff Rowland and was not "about to be intimidated by the sheriff of Maury County." *Id*. at ¶ 21. Plaintiff also testified that he continued taking video of "as much as" and "anything" he wanted and that Sheriff Rowland did not force him or anyone else to turn off their cameras. *Id*. at ¶¶ 23-24. Plaintiff further testified that he published numerous videos containing footage taken after his first conversation with Sheriff Rowland. *Id*. at ¶ 25.

After Plaintiff's initial conversation with Sheriff Rowland, a video recording shows Plaintiff being interviewed by his professional videographer, whereby Plaintiff states: "That's why the Constitution of the United States allows us to come here, to a public park, and have our say. And I want to compliment Maury County laws enforcement and Sheriff Bucky Rowland for protecting our constitutional rights." *Id*. at ¶¶ 26-27. The video further show s Sheriff Rowland approach Plaintiff and request Plaintiff to move his video equipment so as not to obstruct the sidewalk. *Id*. at ¶ 28; Docket Entry No. 135, at ¶ 26. Sheriff Rowland did not ask Plaintiff to stop filming or cease his on-camera interview. *Id*. at ¶ 29; Docket Entry No. 147-1, at 9. Plaintiff testified that he "amicably agreed" to relocate "because [Sheriff Rowland] wasn't violating the Constitution then." (Docket Entry No. 126-4, at 35-36). Plaintiff testified that he does not allege that this encounter with Sheriff Rowland violated his First Amendment rights. (Docket Entry No. 135, at ¶ 29; Docket

Entry No. 147-1, at 9-10). Sheriff Rowland did not arrest Plaintiff or any of the other animal welfare advocates. *Id*. at ¶ 28.

The next day, June 4, 2016, Plaintiff returned to the show, along with approximately 8 or 9 others, including his videographer, and took videos at the show. (Docket Entry No. 142, at ¶¶ 12-13). Plaintiff personally published a total of fifteen (15) videos to YouTube and three (3) videos to Facebook. *Id*. at ¶ 16. Plaintiff testified that he photographed and videotaped everything that he wanted to and posted and published all the videos he wanted to post or publish to YouTube and Facebook. (Docket Entry No. 135, at ¶¶ 33-35). On June 5, 2016, Plaintiff sent an email to a Maury County Sheriff's Deputy stating: "First, please allow me to commend you and Sheriff Rowland for the professionalism and exemplary conduct of all the Maury County Sheriff Deputies I dealt with during the last three days. In my opinion, they did a marvelous job, and Sheriff Rowland's administration, and your key role in it." (Docket Entry No. 139, at ¶ 31).

Sisk and Sheriff Rowland testified that Sisk did not tell Sheriff Rowland to instruct patrons at the Columbia Jubilee not to take video of the event. *Id*. at ¶¶ 41, 43. Defendant Callaway Dial, the "Ringmaster" of the 2016 Columbia Jubilee, was not present for the conversation between Sheriff Rowland and Plaintiff that Plaintiff asserts violated his constitutional rights. *Id*. at ¶¶ 46-47. Dial testified he was unaware of the video rights agreement until after the horse show was over. *Id*. at ¶ 48.

### III. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome

of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in h[is] favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 251). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV. ANALYSIS

Plaintiff asserts that Sheriff Rowland violated Plaintiff's First and Fourteenth Amendment rights during his encounter with Sheriff Rowland at the 65th Annual Spring Jubilee Walking Horse Show on June 3, 2016. Plaintiff also asserts that Defendants Harris, Sisk and Dial conspired with Sheriff Rowland to violate Plaintiff's First and Fourteenth Amendments rights.

Title 42 U.S.C. § 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988). The essential elements of a § 1983 claim are: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprives a person of rights, privilege, or immunities secured by the Constitution or laws of the United States. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). A claim under § 1983 will not lie against a party

9

for purely private conduct, but instead is aimed at action taken under color of state law. *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 783 (6th Cir. 2007). "A person 'acts under color of state law when he abuses the position given to him by the state.' The key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001) (citations omitted).

However, there are instances in which private persons may, by their actions, become "state actors" under § 1983. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

> "Private persons, jointly engaged with state officials in [a] prohibited action, are acting under color of law for purposes of the statute. To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." Therefore, a private party can fairly be said to be a state actor if (1) the deprivation complained of was "caused by the exercise of some right or privilege created by the State" and (2) the offending party "acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

*Id.* at 590-91 (citations omitted).

Plaintiff sues Sheriff Rowland in his official capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Thus, "'[a] suit against an individual in his official capacity is the equivalent of a suit against the government entity.'" *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005) (citation omitted). "[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "'While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees.'" *Kelly v. City of Memphis*, 230 F.3d 1358, No. 00-5073, 2000 WL 1359652, at *2 (6th Cir. Sept. 15, 2000)

10

(quoting *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997)).  A municipality is subject to liability for "only [those] deprivations [that are] visited pursuant to municipal 'custom' or 'policy'" under § 1983.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985).   "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.

Plaintiff sues Defendants Harris, Sisk and Dial, who are undisputedly private actors.  To determine whether a private entity or individual acted under color of state law, courts apply three tests: "'(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.'"  *Campbell*, 509 F.3d at 784 (citation omitted).[5]  However, these "tests are 'relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors.'"  *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007) (quoting *American Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004)).  "If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state

---

[5]These three tests are described as follows:

"The public function test requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'"  "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."  "Under the nexus test, 'the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'"

*Wilkerson v. Warner*, 545 F. App'x 413, 421 n.2 (6th Cir. 2013) (citations omitted).

actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir.

2000); *Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 507 (6th Cir. 2011).

The Sixth Circuit has set forth the standards for finding such a civil conspiracy:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that [(1)] there was a single plan, [(2)] that the alleged coconspirator shared in the general conspiratorial objective, and [(3)] that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *see also Bazzi v. City of Dearborn*, 658 F.3d

598, 602 (6th Cir. 2011).  Allegations of a conspiracy are "insufficient to withstand a motion for

summary judgment [if they] . . . lack the requisite material facts and specificity necessary to sustain

a conspiracy claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987).

## A.  FIRST AMENDMENT CLAIM

Although in his amended complaint Plaintiff does not specifically label his claim as a First

Amendment retaliation claim, in his response memoranda Plaintiff relies on cases involving

retaliation claims, asserting that "[a]s should occur in the instant case" factual issues preclude

summary judgment on whether Defendants' actions constituted retaliation.  (Docket Entry No. 134,

at 4, 6, 10-12; Docket Entry No. 138, at 3-4, 8-10; Docket Entry No. 141, at 3-4, 8-9).  Therefore,

the Magistrate Judge construes Plaintiff's claim as a claim that Defendants retaliated against him

in response to his exercise of free speech.  *See Dean v. Byerley*, 354 F.3d 540, 551 (6th Cir. 2004)

(construing plaintiff's claim as a "garden-variety retaliation claim."); *Ctr. for Bio-Ethical Reform,*

*Inc. v. City of Springboro*, 477 F.3d 807, 820-21 (6th Cir. 2007).

12

A § 1983 claim can be based upon a state actors's retaliation against an individual for exercising his or her First Amendment rights. *Dean*, 354 F.3d at 551. The Sixth Circuit has stated:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). "The inquiry of whether activity is 'protected' or an action is 'adverse' is context-specific." *Ctr. for Bio-Ethical Reform*, 477 F.3d at 821 (internal quotation marks omitted) (citing *Thaddeus-X*, 175 F.3d at 388). Here, the only element contested by any Defendant is the second element, a showing that an adverse action was taken against Plaintiff.

The Sixth Circuit has adopted the standard, "amenable to all retaliation claims," that "an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 397, 396. The Sixth Circuit explained:

> The benefits of such a standard are that it is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening the most trivial of actions from constitutional cognizance. We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.

*Id.* at 398.

A plaintiff need not show he or she was actually deterred from exercising his or her right to free speech, but rather must show the actions were "'capable of deterring a person of ordinary firmness from exercising his or her right[s].'" *Ctr. for Bio-Ethical Reform*, 477 F.3d at 822 (citation omitted). Although whether an alleged adverse action is sufficient to deter a person of ordinary

13

firmness is generally a fact question, "when a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (citations omitted). "Indeed, it 'trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor.'" *Id*. at 584 (citation omitted) (emphasis and alterations in original); *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (recognizing that in a retaliation case, because there is no justification for harassing people for exercising their constitutional rights the effect on freedom of speech need not be great in order to be actionable, the Sixth Circuit stated, "Nevertheless, since § 1983 is a tort statute, we must be careful to ensure that *real injury* is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred.") (citations omitted and emphasis added).

Here, the undisputed facts reflect that Plaintiff was not deterred or chilled in exercising his First Amendment rights. Plaintiff asked Sheriff Rowland to repeat what he said while he recorded him. Sheriff Rowland stated that he asked Plaintiff to turn off his video cameras because he was made aware that the copyright to the show had been purchased. Sheriff Rowland specifically stated that any *reproduction* of his video recording could open Plaintiff up for a civil suit and possible criminal liability. Plaintiff then replied to Sheriff Rowland that he welcomed a civil suit, but that it was not the responsibility of law enforcement. Sheriff Rowland did not arrest, cite or display his handcuffs to anyone. Nor did Sheriff Rowland verbally threaten to arrest or cite anyone for video recording the show. Plaintiff continued videoing the show. Plaintiff testified that he stood his ground and was not going to be intimidated by Sheriff Rowland. Plaintiff also testified that he

continued taking video of "as much" and of "anything" as he wanted. Plaintiff also published numerous videos containing footage taken after his first conversation with Sheriff Rowland.[6] Further, Plaintiff returned to the horse show the following day without incident. Moreover, on June 5, 2016, Plaintiff sent an email to a Maury County Sheriff's Deputy commending Sheriff Rowland and the Maury County sheriff deputies for their professionalism and exemplary conduct during the three days of the show.

Based upon these undisputed facts, the Magistrate Judge concludes that Plaintiff fails to show that the actions by Sheriff Rowland would deter a protestor and licensed attorney of ordinary firmness from continuing videoing and exercising his First Amendment rights. *See Mezibov*, 411 F.3d at 721 ("Thus, the appropriate formulation of the 'adverse action' prong in [plaintiff's] case is whether the alleged defamation would deter a criminal defense attorney of ordinary firmness from continuing to file motions and vigorously defend his client." (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir.1999) ("formulating test under 'adverse action' prong for elected city

_____

[6]Despite Plaintiff's prior October 18, 2017 deposition testimony, Plaintiff filed an affidavit, executed on December 19, 2017, stating that his second encounter with Sheriff Rowland also violated his First Amendment rights. (Docket Entry No. 134-5). However, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) ("When a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony."). Thus, "[a] directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. . . . If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citations omitted). Here, Plaintiff's affidavit directly contradicts his deposition testimony. Further, in any event, any such imposition on Plaintiff was de minimis and would not constitute a First Amendment violation as Plaintiff only moved his video camera from the sidewalk and Plaintiff was not prevented from video recording.

15

council member as whether a 'public official of ordinary firmness' would be deterred from exercising her First Amendment rights")))). Further, the Magistrate Judge's conclusion is supported by the fact that Plaintiff was not deterred or chilled in the exercise of his First Amendment rights by Sheriff Rowland's actions. *See Wurzelbacher*, 675 F.3d at 585 ("Under the circumstances alleged in the present case, we conclude that 'a person of ordinary firmness' would not be deterred or chilled. Our conclusion is supported by the fact that [plaintiff] was not deterred or chilled in the exercise of his First Amendment rights as a result of defendants' wrongful conduct."); *Mezibov*, 411 F.3d at 722-23; *Hogan Field Hangars, LLC v. Butler Cty. Bd. of Comm'rs*, No. 1:12-CV-388, 2014 WL 197842, at *8 (S.D. Ohio Jan. 15, 2014) ("Although a plaintiff is not required to show an actual chilling of his protected expression, the fact that Hogan admits that his criticizing and petitioning activities were not actually chilled indicates that the adverse actions alleged are insufficient to chill a person of ordinary firmness.").

Plaintiff's reliance on *Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004) and *Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005) are misplaced, as both are factually distinguishable. In *Dean*, the plaintiff picketed in front of the residence of the defendant, the Regulation Counsel and Director of Professional Standards Division for the State Bar of Michigan. 354 F.3d at 544. There, the defendant allegedly confronted the plaintiff and threatened that the plaintiff would never practice law in Michigan because of his picketing and threatened to have the plaintiff arrested. *Id*. at 545. The defendant also allegedly twice drove his automobile at the plaintiff. *Id*.

In *Parks*, the plaintiff attended an arts festival wearing a sign with a religious message. 395 F.3d at 646. A uniformed off-duty police officer, hired to work as security for the festival, identified himself as an officer and told the plaintiff to move beyond the barricades and that he would be

arrested if he did not comply.  *Id.*  Because he feared arrest, the plaintiff left the barricaded area and

did not continue engaging in his activity outside the barricades.  *Id.*  The plaintiff wanted to attend

a similar festival, held a month later at the same location, to communicate his religious beliefs, but

he was deterred from going because of the incident at the arts festival.  *Id.*

Here, Plaintiff was not prohibited from exercising his free speech rights.  Sheriff Rowland

did not verbally threaten to arrest Plaintiff, Plaintiff continued videoing as much of the show as he

wanted, and Plaintiff returned to video the show the following day.  Accordingly, for the previously

stated reasons, the Magistrate Judge concludes that Plaintiff's First Amendment claim is without

merit.

## B. FOURTEENTH AMENDMENT CLAIM

Plaintiff also asserts that Defendants violated his rights under the Fourteenth Amendment

based upon the same conduct alleged in the amended complaint.  The Supreme Court has stated that

"[w]here a particular Amendment 'provides an explicit textual source of constitutional protection'

against a particular sort of government behavior, 'that Amendment, not the more generalized notion

of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510

U.S. 266, 273 (1994) (citation and internal quotation marks omitted).  Thus, "'[a]ny claim for a

violation of [a] substantive due process right to free speech is duplicative of [a] First Amendment

retaliation claim.'"  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012)

(citation omitted).  Accordingly, to the extent that Plaintiff asserts that he has a substantive due

process claim related to his free speech claim, his Fourteenth Amendment claim is dismissed as

duplicative.  *Id.*

## C. CIVIL CONSPIRACY CLAIM

Because there was no underlying constitutional violation, Plaintiff's conspiracy claim against Defendants cannot succeed. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) ("Because there was no Fourth Amendment violation, there is no conspiracy claim based on State Defendants' acts."); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) ("[The plaintiff] cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her.").

### D.  CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

Sheriff Rowland contends that Plaintiff lacks standing to pursue declaratory and injunctive relief.  As there was no constitutional violation, Plaintiff cannot show that there is ongoing unconstitutional conduct to enjoin and therefore this request for relief is denied. *Taylor v. Michigan Dep't of Nat. Res.*, 502 F.3d 452, 458 (6th Cir. 2007) ("We need not address whether or not plaintiff would have had standing to request an injunction because, as determined above, there was no constitutional violation and therefore there is no ongoing unconstitutional conduct to enjoin.").

### E.  REQUEST FOR ATTORNEYS' FEES BY DEFENDANTS SISK AND DIAL

Sisk and Dial request an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.[7]  Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  Under Section 1988, prevailing defendants may only recover their reasonable attorneys fees if "'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (citation omitted).  "The fact that a plaintiff may ultimately

---

[7]As an initial matter, the Magistrate Judge notes that a request for attorneys' fees should be made by separate motion.  Local Rule 54.01(b).

18

lose his case is not in itself a sufficient justification for the assessment of fees." *Id.* "A court must be sensitive that '[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Riddle v. Egensperger*, 266 F.3d 542, 552-53 (6th Cir. 2001) (citations omitted). The Sixth Circuit has cautioned:

> A potential plaintiff's fear of an increased risk of being assessed attorney fees after extensive discovery has taken place and who continues to proceed to a ruling on a summary judgment motion, would create a disincentive to the enforcement of civil rights laws and would have a chilling effect on a plaintiff who seeks to enforce his/her civil rights, especially against a government official.

*Id.* at 551. However, "'courts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate.'" *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005) (citation omitted).

The Magistrate Judge notes that Plaintiff's claims survived a motion to dismiss by these Defendants. (Docket Entry Nos. 97 and 109). Based upon the record, the Magistrate Judge cannot say that Plaintiff's action was totally frivolous, unreasonable, or without foundation as to Defendant Sisk, as Sisk did enter into the agreement with Harris, with or without approval from the MCHA, and informed Sheriff Rowland about the agreement. However, Plaintiff woefully failed to show even minimal connection to Dial and the alleged events. Plaintiff has not presented any evidence in relation to Dial's alleged role. Accordingly, the Magistrate Judge concludes that Defendant Dial should be awarded attorney's fees under 42 U.S.C. § 1988(b). Pursuant to Local Rule 54.01(b)(1), (3), Defendant Dial shall file an affidavit of counsel setting out in detail the number of hours spent

19

on the motion for summary judgment, as well as the rate customarily charged by counsel for such work and the prevailing rate charged in the community for similar services, as well as any other factors which the Court should consider in making the award.

As to Defendants' request for fees under 28 U.S.C. § 1927, that section provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Sixth Circuit has stated:

> Section 1927 imposes an objective standard of conduct on attorneys, and courts need not make a finding of subjective bad faith before assessing monetary sanctions under § 1927. Instead, a district court may impose sanctions under § 1927 when it determines that "'an attorney reasonably should know that a claim pursued is frivolous.'" Simple inadvertence or negligence, however, will not support sanctions under § 1927. "'There must be some conduct on the part of the subject attorney that trial judges, applying collective wisdom of their experience on the bench could agree falls short of the obligations owed by a member of the bar to the court.'" Moreover, "'an award of attorneys' fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.'"

*Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006) (citations omitted).

Defendants contend that § 1927 sanctions are warranted in this action against the *pro se* Plaintiff, a licensed practicing attorney in Mississippi, because the Court previously warned Plaintiff about sanctions under § 1927, Plaintiff continued to push his anti-soring message. (Docket Entry No. 124, at 27-28). Defendants also contend that Plaintiff "made scheduling depositions an exhaustive and frustrating process by taking unreasonable and difficult positions," prolonged the depositions by his difficult conduct, "used this lawsuit as a platform to publicize himself and his

20

cause," and "impugned Defendants' reputations by publishing false and misleading information about them on the internet."  *Id.* at 28-31.

The Magistrate Judge's prior warnings pertained to Plaintiff making multiple calls to the Clerk's Office about requesting subpoenas and abusing Fed R. Civ. P. 8 by filing a 60-page exhibit to the complaint along with manually filed  documents, but Plaintiff's actions did not involve Defendants.  (Docket Entry Nos. 27 and 59).  While the Magistrate Judge excluded the testimony of Plaintiff's expert witnesses, stating that "this is not a case about horse soring," the Magistrate Judge understood Plaintiff as trying to show motive as to why Defendants allegedly violated his First Amendment rights.  (Docket Entry No. 106).  While such proposed evidence was irrelevant, the Magistrate Judge does not see that as evidence of egregious conduct warranting sanctions.  Further, although the Magistrate Judge does not doubt that Plaintiff has been difficult during this litigation, the Magistrate Judge does not believe that § 1927 sanctions are warranted based upon this record.

## V.  RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** that Defendant Bucky Rowland's motion for summary judgment (Docket Entry No. 119), Defendants David Sisk's and Callaway Dial's motion for summary judgment (Docket Entry No. 123), and Defendant Jerry W. Harris's motion for summary judgment (Docket Entry No. 127) be **GRANTED**; that Defendant Sisk's request for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927 be **DENIED**; and that Defendant Dial's request for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 be **GRANTED, but DENIED** as to 28 U.S.C. § 1927.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation

Case 1:16-cv-00068    Document 168    Filed 08/30/18    Page 21 of 22 PageID #: 2141

proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

      **ENTERED** this 30th day of August, 2018.


/s/     Joe B. Brown
JOE B. BROWN
United States Magistrate Judge